**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――

**No. 23-1839**

―――――――

BRANDON A. WILLIAMS,

        Plaintiff - Appellant,

    v.

SERGEANT M. MITCHELL; OFFICER STEPHEN STONE; OFFICER J. MCCLANAHAN; OFFICER JOHN DOE, who responded to the scene of the accident on September 30, 2020, at the 4300 block of Pretty Lake Avenue, Norfolk, Virginia, involving Rex Aman and Brandon Williams; ALL JOHN DOE NORFOLK POLICE OFFICERS, who responded to the accident of 9/30/20 at Pretty Lake Avenue, Norfolk, Virginia, involving Rex Aman and Brandon Williams; OFFICER RODNEY VANFAUSSIEN,

        Defendants - Appellees.

―――――――

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Mark S. Davis, Chief District Judge.  (2:22-cv-00388-MSD-DEM)

―――――――

Argued:  October 29, 2024                Decided:  November 26, 2024

―――――――

Before GREGORY and HARRIS, Circuit Judges, Louise W. FLANAGAN, United States District Judge for the Eastern District of North Carolina, sitting by designation.

―――――――

Reversed in part, vacated in part, and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Harris and Judge Flanagan joined.

―――――――

**ARGUED:** Andrew Mitchell Hendrick, RULOFF, SWAIN, HADDAD, MORECOCK, TALBERT & WOODARD, P.C., Virginia Beach, Virginia, for Appellant. Brian N. Casey, CLARKE, DOLPH, HULL & BRUNICK, PLC, Virginia Beach, Virginia; James Arthur Cales III, FURNISS, DAVIS, RASHKIND & SAUNDERS, Norfolk, Virginia, for Appellees. **ON BRIEF:** Robert J. Haddad, RULOFF, SWAIN, HADDAD, MORECOCK, TALBERT & WOODWARD, P.C., Virginia Beach, Virginia, for Appellant.

GREGORY, Circuit Judge:

This case, now before us after the district court's grant of motions to dismiss based on the insufficiency of the pleadings, involves a series of interactions between Plaintiff Brandon Williams and Norfolk, Virginia, police officers. Officer John D. McClanahan first falsely charged Williams with misdemeanor trespassing. He then perjured himself at trial to obtain a conviction. On appeal, Williams exposed McClanahan's perjury through a recording he had taken of the incident, and the state appellate court ordered the charge dismissed. Two weeks later, Norfolk police officers, including McClanahan, responded to an accident in which Williams had been hit by a speeding drunk driver. They recognized him immediately as "the guy that gave McClanahan a ration of shit." The officers allegedly falsified information on the accident report with the intent of depriving Williams of his property right to sue the other driver.

Williams brought a claim of retaliation for the exercise of his First and Sixth Amendment rights against the police officers. He also brought a conspiracy claim and two Virginia state law claims for intentional infliction of emotional distress ("IIED"), among others. The district court granted the officers' motions to dismiss Williams' retaliation claim, holding that he failed to plead an adverse action, and granted their motions as to his conspiracy claim upon finding that he failed to plead a constitutional violation. The court dismissed without prejudice Williams' state law IIED claims by declining to exercise supplemental jurisdiction.

Considering the facts as pled, Williams has adequately alleged that the officers' intentional misrepresentation on the accident report would likely deter him from recording

3

police activity and defending himself at trial in the future. Therefore, we reverse the district court's dismissal of his retaliation claim. Having thus found a plausible constitutional violation at this stage, we vacate the court's dismissal of his conspiracy claim and remand the claim for reconsideration consistent with this opinion. Finally, we vacate the court's dismissal of Williams' IIED claims, which are also remanded for consideration consistent with this opinion.

I.

The following facts were alleged in Williams' Second Amended Complaint. In January 2020, Brandon Williams was detained by Norfolk, Virginia, police officer John D. McClanahan on a misdemeanor trespassing charge. J.A. 8. Williams recorded his interaction with McClanahan. *Id.* At trial on the trespassing charge, McClanahan testified falsely and Williams was convicted. J.A. 8, 11. Williams appealed his conviction and used his recording to show that McClanahan had lied under oath. J.A. 8. The appeals court heard Williams' argument and dismissed the charges against him on September 15, 2020, recognizing that he never should have been prosecuted. J.A. 8, 11.

On September 30, 2020, Williams was seriously injured in a car accident in Norfolk, Virginia. J.A. 9. Williams was operating his vehicle carefully when he was hit by Rex Aman, who was driving over seventy-five miles per hour and swerving outside his lane. *Id.* When various Norfolk police officers including McClanahan arrived at the scene to investigate the accident, they pointed at and talked about Williams. J.A. 9, 15. Officer Rodney Van Faussien said, while pointing to Williams, "[t]his is the guy that gave McClanahan a ration of shit,"

4

referring to Williams' defense of his trespassing charge. J.A. 10. Aman's blood alcohol level was .30—well above the legal limit—and the officers learned of Aman's high speed from eyewitnesses. J.A. 9.

Despite information from eyewitnesses, a debris field showing a high-impact accident, and Aman's blood alcohol level, police officers falsely stated on the accident report that Aman was driving the speed limit, had not been drinking, and that his car had suffered a steering defect. J.A. 10. This was allegedly done with the intent to deny Williams his rights by minimizing the accident and deflecting blame from Aman. *Id.*

## II.

Williams brought eight counts[1] in the United States District Court for the Eastern District of Virginia against Seargent M. Mitchell, Officer Steven B. Stone, Officer John D. McClanahan, Officer Rodney Van Faussien, Officer John Doe, and all John Doe Norfolk Police officers who responded to the scene of the accident. J.A. 7. McClanahan filed a motion to dismiss, and Mitchell, Stone, and Van Faussien, collectively, filed a separate motion to dismiss (all together, referred to as "Defendants"). J.A. 5. Williams requested oral argument, but the district court issued an opinion on the papers, granting Defendants' motions to dismiss Williams' federal law claims for failure to state a

---

[1] These counts were: denial of due process and equal protection (Count I), retaliation for exercise of constitutional rights (Count II), denial of due process in violation of the Fifth and Fourteenth Amendments (Count III), denial of equal protection in violation of the Fourteenth Amendment (Count IV), conspiracy (Count V), intentional infliction of emotional distress arising out of the September 15, 2020 incident (Count VI), intentional infliction of emotional distress (Count VII), and a claim against the City of Norfolk for the aforementioned constitutional violations (Count VIII). J.A. 11–16.

claim under Federal Rule of Civil Procedure 12(b)(6), and dismissing his state law claims without prejudice by declining to exercise supplemental jurisdiction. *Williams v. Mitchell*, 682 F. Supp. 3d 503, 507, 520 (E.D. Va. 2023). Williams appeals only the dismissal of his claims for retaliation, conspiracy, and IIED.

As for his retaliation claim, Williams alleged in the operative complaint that "[b]y recording McClanahan during his arrest on the trespassing charge, and by pointing out that McClanahan had lied during his testimony on the charge, Williams was exercising his First Amendment rights." J.A. 12. He continued that "[b]y insisting on a trial of the trespassing charge and by challenging the testimony of McClanahan, Williams was exercising his Sixth Amendment rights." *Id.* Williams claimed that Defendants "intentionally retaliated against [him] for the exercise of his rights by misrepresenting facts on the accident report . . . because they realized that he was the person who 'gave McClanahan a ration of shit,'" and they "did so with the intent to deprive Williams of his property right to bring a claim for the injuries from the accident by trying to minimize the accident and deflect blame from Aman." *Id.* As a result of Defendants' actions, "Williams has suffered both physical and emotional injuries which have included sleep disturbance, actual physical pain, and a significant exacerbation of post-traumatic stress disorder." J.A. 13.

Regarding conspiracy, Williams alleged that "Defendants acted jointly and in concert for the purposes of denying Williams his constitutional rights." J.A. 14.

Williams also brought two IIED claims, one related to McClanahan's perjury, and the second related to the Defendants' conduct at the accident scene. J.A. 14–15. He alleged that both incidents have caused him physical and emotional injuries. J.A. 15–16.

Williams timely appealed the district court's dismissal of these claims.

### III.

We review a district court's dismissal under Rule 12(b)(6) *de novo* and view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded allegations. *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002); *see also* Fed. R. Civ. P. 8(a)(2).

We review a district court's decision to not exercise supplemental jurisdiction over state law claims for abuse of discretion. *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 197 (4th Cir. 1997).

### IV.

Before us on appeal is the district court's dismissal of Williams' retaliation, conspiracy, and IIED claims, which will each be addressed in turn.

### A.

A plaintiff seeking to recover for First and Sixth Amendment retaliation must allege that (1) he engaged in protected activity, (2) the defendant took some action that adversely affected his constitutional rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000); *McFadden v. Lewis*, 517 F. App'x 149, 150 (4th Cir. 2013). We begin by addressing the first and third elements, which are straightforwardly satisfied.

As for the first element, it is uncontested that Williams engaged in protected First Amendment activity when he recorded his initial interaction with McClanahan. "Creating

7

and disseminating information is protected speech under the First Amendment," including "[r]ecording police encounters." *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 680–81 (4th Cir. 2023). It is also undisputed that Williams engaged in protected Sixth Amendment activity by demanding a trial on the trespassing charge and challenging McClanahan's testimony at trial. The right to a trial and to confront one's witnesses are constitutionally protected rights under the Sixth Amendment. U.S. Const. amend. VI.

Williams has also adequately pled the third element. For a causal relationship, a plaintiff must show "at the very least[] that the defendant was aware of [plaintiff's] engaging in protected activity," and "some degree of temporal proximity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Here, Williams has sufficiently alleged that the Defendants were aware of his First and Sixth Amendment activity: Van Faussien pointed at Williams and stated to fellow officers, "[t]his is the guy that gave McClanahan a ration of shit." J.A. 10. And as for temporal proximity, the accident occurred on September 30, 2020, only fifteen days after the appeals court dismissed the charges against Williams following his presentation of evidence showing that McClanahan had lied at trial. *See* J.A. 8–9.

Finally, although the second element requires closer analysis, we also find that Williams adequately alleged that Defendants' retaliatory action adversely affected his First and Sixth Amendment rights. To satisfy this element, a plaintiff must show that a defendant's conduct resulted in more than a de minimis inconvenience to the exercise of the plaintiff's rights; rather, it must chill the exercise of such rights such that it would likely deter "a person of ordinary firmness" from exercise in the future. *Constantine*, 411 F.3d

8

at 500; *ACLU of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785, 786 n.6 (4th Cir. 1993). While the defendant's conduct must chill the exercise of a constitutional right, the conduct need not constitute a constitutional violation in itself. *Id.* This element requires a "fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez Corp. Indus.*, 202 F.3d at 686. "Context matters," as "the significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006).

According to Williams, the officers' adverse action was their intentional misrepresentation of facts on the accident report. J.A. 12. In assessing whether this action would chill the exercise of his First and Sixth Amendment rights as pled, we consider the relative statuses of Williams and the officers: Here, there is a significant power imbalance in Williams' relationship with the police, as he is a Black man who had recently exposed an officer's perjury. We must also account for the additional context. The police had previously lied to charge and convict Williams with misdemeanor trespassing, and then at the accident scene, the officers allegedly pointed at him, talked about him, and lied again with the intent of depriving him of his rights, despite his being severely injured and traumatized in the immediate aftermath of a high-speed crash. Finally, we must also consider the nature of the retaliatory acts. The adverse action here is not the mere misrepresentation of facts on an accident report. It is the officers' *intentional* misrepresentation—the falsity of the report plus the animus motivating it.

9

That the police would purposefully falsify an accident report as payback for Williams proving his innocence is egregious, and particularly so where the officers sought to deprive Williams of a potential claim against a drunk driver where Williams was clearly not at fault. This demonstrates the extreme lengths these officers were willing to go to punish Williams for exercising his constitutional rights. These circumstances would be enough to deter a person of ordinary firmness from exercising their First and Sixth Amendment rights again in the future.

Contrary to Defendants' contentions, *see* Resp. Br. at 9, the fact that Williams was able to pursue and settle a civil lawsuit against Aman does not doom his retaliation claim. His claim stems from the officers' misrepresentation of information in an intentional attempt to interfere with Williams' rights, which is exactly the kind of government conduct that would chill someone from exercising their constitutional rights in the future; it does not matter that such attempted interference may have failed. *Cf. Kirby v. City of Elizabeth City*, 388 F.3d 440, 450 n.8 (4th Cir. 2004). Likewise, Williams' success in defending against his trespassing charge does not counsel a different outcome, as it was this defense that led to law enforcement's deliberate attempt to deprive him of his property rights. As Williams' counsel articulated at oral argument, given how the officers' animus came to bear, "a reasonable person in that situation is [ ] going to think twice: Do I want to endure that again . . . just to challenge a simple misdemeanor trespassing charge?" It is at least plausible that Williams would be hesitant to record later police encounters or demand a trial knowing that it could result in future—and perhaps more grievous—police misrepresentations with the express purpose of causing him harm.

10

The accident report's inadmissibility in a civil lawsuit does not change this analysis. *See* Va. Code Ann. § 46.2-379 ("crash reports made by investigating officers . . . shall not be used as evidence in any trial, civil or criminal, arising out of any accident"); *contra Williams*, 682 F. Supp. 3d at 513–14 (district court finding that "it is unlikely that Defendants' alleged conduct of falsifying a police document that is *inadmissible* in civil suits and criminal cases would chill or deter a person from recording interactions with law enforcement in order to prevent police misconduct, protect their civil liberties, or defend themselves in a criminal investigation or trial") (emphasis in original). The report is indicative of how police officers would likely testify at trial, and could also be used to refresh an officer's recollection or for impeachment purposes. *See* Va. R. Evid. 2:613, 2:801(d)(1); *Ruhlin v. Samaan*, 282 Va. 371, 451 (2011); *Staton v. King*, 62 Va. Cir. 469, 2003 WL 22071444, at *5 (Va. Cir. Ct. 2003). But beyond that, the fact that the police would eschew their duties and lie with the intent of depriving Williams of his rights—regardless of whether the officers' falsification actually impeded any civil lawsuit against Aman—is materially adverse.

Viewed in the light most favorable to Williams and at this stage of the proceedings, law enforcement's intentional misrepresentation would likely deter a person of ordinary firmness from recording police activity, challenging an officer's testimony, and vigorously defending oneself at trial in the future.

Williams has thus alleged a First and Sixth Amendment retaliation claim sufficient to survive a motion to dismiss, and the district court's opinion granting Defendants' motions on this claim must be reversed.

11

B.

To state a claim for civil conspiracy under 42 U.S.C. § 1983, a plaintiff must allege that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

The district court's analysis on this claim "beg[an], and end[ed]," with whether Defendants' alleged conduct resulted in a violation of Williams' constitutional rights.[2] *Williams*, 682 F. Supp. 3d at 518.  The court only considered potential constitutional violations under the Fifth and Fourteenth Amendments as well as a constitutional right to access the courts. *See id.* at 519.  But retaliation can be the constitutional violation for such a conspiracy claim, *see Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (considering civil conspiracy claim under § 1983 based on underlying First Amendment retaliation claim), and counsel for Defendants Mitchell, Stone, and Van Faussien admitted at oral argument that reversal on the retaliation claim would necessitate remand on the conspiracy claim.

---

[2] The district court's only mention of the other elements was in a footnote, where it explained that "it is a close call as to whether Plaintiff adequately alleged that Defendants entered into an agreement." *Williams*, 682 F. Supp. 3d at 519 n.9.  It found that "Plaintiff's allegations appear sufficient to support the inference that at least two defendants, acting together, retaliated against him due to his actions in the underlying trespassing case" and thus "this element appears satisfied," although it ultimately held that "the lack of a constitutional deprivation is fatal to Plaintiff's claim." *Id.*

Having found that Williams has adequately alleged the deprivation of a constitutional right—that being his claim of First and Sixth Amendment retaliation—Williams' conspiracy claim should be remanded to the district court for reconsideration.

C.

A district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy," unless certain circumstances apply. 28 U.S.C. § 1367(a)–(c). These circumstances include if "the district court has dismissed all claims over which it has original jurisdiction," at which time the court "may decline to exercise supplemental jurisdiction." *Id.* § 1367(c)(3). "Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018).

That is what the district court did here: After granting Defendants' motions to dismiss all of Williams' federal claims, the court then dismissed Williams' two state law claims for IIED without prejudice by declining to exercise supplemental jurisdiction. *Williams*, 682 F. Supp. 3d at 519–20. But as we have reversed the district court's rulings on Williams' federal claims, his IIED claims should be remanded to the district court for reconsideration. Counsel for Defendants Mitchell, Stone, and Van Faussien acknowledged at oral argument that this would be the typical procedure, but contended that Williams' IIED claims should not be remanded because he has since raised them in a state court case filed after the district court's dismissal of his claims. However, and although dispositive

13

pleadings have been filed in Williams' state case, no final rulings have been issued, so there is no current tension between the parallel cases.

Accordingly, Williams' IIED claims should be remanded to the district court for reconsideration.

## V.

For the foregoing reasons, we reverse the district court's dismissal of Williams' retaliation claim. We vacate the court's dismissal of Williams' conspiracy and IIED claims and remand those claims for reconsideration consistent with this opinion.

*REVERSED IN PART, VACATED IN PART, and REMANDED*